■ In the Matter of BRUCE J. MCMORRAN, Respondent, v NEW YORK STATE OFFICE OF MENTAL HEALTH et al., Appellants. [681 NYS2d 127] —Carpinello, J. Appeal from a judgment of the Supreme Court (Canfield, J.), entered March 26, 1998 in Albany County, which granted petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to annul a determination of respondents which, *inter alia*, reassigned his work location.

Respondent Central New York Psychiatric Center (hereinafter CNYPC), operated by respondent State Office of Mental Health (hereinafter OMH), consists of several satellite units at various State correctional facilities. Petitioner has been employed at CNYPC since 1986, initially under the title "Psychologist II" and, between June 1990 and September 1993, under the title "Chief of Forensic Unit". Following an unsatisfactory performance evaluation which resulted in petitioner's demotion, petitioner and CNYPC entered into a "settlement agreement" in February 1994 to resolve their differences.

Pursuant to this agreement, petitioner agreed to accept a voluntary demotion from the title "Chief of Forensic Unit I" to the title "Treatment Team Leader Mental Health". The agreement indicated that he would be assigned to the Wende Satellite Unit at Wende Correctional Facility in Erie County.[1] CNYPC, in turn, agreed to make petitioner's "status as a Treatment Team Leader Mental Health (M-1) at the Wende Satellite Unit * * * immediately permanent" (waiving the probationary period he would otherwise have been required to fulfil in this new title), granted his appeal of a past performance evaluation and agreed to forego filing disciplinary charges against petitioner for "any conduct or activities relating to his performance in the title of Chief of Forensic Unit I". The agreement also outlined petitioner's anticipated salary in the new title and contained assurances that his "competitive class seniority date will not be affected by his change in title or salary grade".

As of March 1994, petitioner worked alternate days at Wende, the Groveland Satellite Unit in Livingston County and Albion Satellite Unit in Orleans County (he was initially reimbursed for travel expenses to the Groveland and Albion units and later permitted to charge his traveling time). In May 1997, petitioner was informed that he was being assigned to Groveland full time. Claiming that the settlement agreement

1. Specifically, the agreement states that petitioner "shall accept a voluntary demotion from the title of Chief of Forensic Unit I (M-2) to Treatment Team Leader Mental Health (M-1) with assignment to the Wende Satellite Unit".

forever prohibits his reassignment from Wende, petitioner commenced this CPLR article 78 proceeding seeking to annul the "transfer" without consent to Groveland as violative of both the settlement agreement and Civil Service Law § 70 (1). Supreme Court, agreeing with petitioner's interpretation of the settlement agreement, granted the petition and this appeal ensued.

In our view, although references are made in the agreement to Wende, it cannot be read as an explicit commitment to *permanently* assign petitioner to this particular satellite unit. The essence of the parties' settlement agreement, "when read as a whole" (*Matter of Foster v McCall*, 248 AD2d 853, 854), concerns petitioner's *title* and *salary level* following their dispute over his performance in the title of Chief of Forensic Unit. If job location was an integral component of the parties' negotiations and settlement, such dispute—or resolution thereof—is not clearly reflected in the agreement. To be sure, the parties could easily have stated that petitioner shall accept a voluntary demotion from one title to another "with [*a permanent*] assignment" to Wende.

In the absence of language clearly indicating such an intent, we find that the reference to Wende did not bind CNYPC to employ petitioner in perpetuity at this location. Indeed, adopting petitioner's construction of the agreement would require CNYPC to keep this facility open for as long as petitioner is employed. Our conclusion that reassignment to another facility is not prohibited is supported by reference to another provision in the agreement, namely, paragraph seven, which provides as follows: "In the event that [petitioner] is not made a permanent Treatment Team Leader, his acceptance of the voluntary demotion from the Chief of Forensic Unit I position is automatically rescinded and OMH agrees to restore him to the position of Chief of Forensic Unit I immediately." Significantly, no reference to work site assignment is contained in this provision.[2]

Petitioner claims that the language "immediately permanent" in paragraph two of the agreement gives him "the right to a permanent place of employment" at Wende. The entire provision provides: "[Petitioner's] status as a Treatment Team Leader Mental Health (M-1) at the Wende Satellite Unit will

---

2. Even assuming that respondents had a contractual obligation to assign petitioner to Wende in perpetuity—an obligation we do not glean from the settlement agreement—Supreme Court nevertheless erred in ordering petitioner's reinstatement to the position of Chief of Forensic Unit pursuant to paragraph seven as petitioner was made immediately permanent in the title Treatment Team Leader and, therefore, no event triggered automatic reinstatement.

be immediately permanent and H.E. Smith, Executive Director of CNYPC, waives [petitioner's] probationary period in this title." The phrase "immediately permanent" obviously refers to the status of petitioner's civil service title (i.e., permanent versus probationary). Indeed, permanent status in a title, as opposed to probationary status, has particular import for civil servants. In the absence of an agreement to make petitioner's title "immediately permanent", he would have been required to satisfactorily complete a probationary period during which he could have been summarily terminated or disciplined (*see*, Civil Service Law § 63 [1]; 4 NYCRR 4.5). Immediate permanent status and waiver of the otherwise mandated probationary period bestowed upon petitioner, among other rights, the right not to be terminated or otherwise subjected to disciplinary penalties except upon a proper showing of misconduct or incompetency following a hearing (*see*, Civil Service Law § 75).

Nor are we persuaded that petitioner was "transferred" without his consent in violation of Civil Service Law § 70 (1). Since petitioner remained under the jurisdiction of respondent Hal E. Smith, as Executive Director of CNYPC, in the same title (i.e., Treatment Team Leader), his job location change must be considered a reassignment (*see*, 4 NYCRR 1.2 [b] [2]; *Gordon v Burstein*, 116 AD2d 85, *lv denied* 68 NY2d 603; *Matter of Fitzpatrick v Ruffo*, 110 AD2d 1032, 1034, *affd* 66 NY2d 647) which could be effectuated without his consent (*compare*, 4 NYCRR 1.2 [b] [1]; *cf.*, *Matter of Vrooman v Prevost*, 80 AD2d 933).

Crew III, J. P., White, Peters and Graffeo, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, determination confirmed, petition dismissed and it is declared that petitioner's reassignment from Wende Correctional Facility did not violate the parties' 1994 settlement agreement.